**E. B. Chapin, Appellee, v. Miles & Ricketts, Appellants.**

1. ESTOPPEL—*what essential to application.* Before the doctrine of estoppel can be applied as between individuals it is essential that the party against whom it is invoked shall by words or conduct wilfully cause another to believe that a certain state of facts exists and thereby induce him to act thereon so as to change his previous condition by doing something detrimental to his interests.

2. LANDLORD AND TENANT—*how lien enforced.* A landlord merely by virtue of his lien on the crops of his tenant without the levy of a distress warrant has no right to take possession of such crops either before or after the rent is due. His remedy for fraudulent acts tending to impair the security of his lien is an action on the case; his lien vests him with no right in the property itself and will not enable him to maintain replevin, trover or trespass prior to the levy of his distress warrant.

Action in case. Appeal from the County Court of Champaign county; the Hon. T. J. ROTH, Judge, presiding. Heard in this court at the May term, 1909. Reversed and remanded. Opinion filed October 25, 1909.

HENRY I. GREEN, for appellants.

THOMAS J. SMITH and C. R. IUNGERICH, for appellee; RAY & DOBBINS, of counsel.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an appeal from a judgment for $290.98, rendered in an action in case by Chapin against Miles & Ricketts, to recover the value of a quantity of oats purchased by the latter from a tenant of the former. The declaration alleges in substance that the plaintiff leased a farm of which he was the owner, to one Hill, for a term expiring February 23, 1908, for the sum of $1130, which rental was secured by a note for that amount of even date with the lease; that Hill raised a large crop of oats on said premises during said term; that the defendants, with the knowledge that Hill was a

tenant under the plaintiff, and well knowing that said oats had been raised upon said premises, without the consent of plaintiff, bought and received from said Hill 1000 bushels of the same, and that said Hill defaulted in the payment of a part of the rent provided by the lease to be paid.

The defendants pleaded that while they purchased the oats in question from Hill, knowing that the same were raised by him on land rented by him of the plaintiff, in order to protect themselves they made inquiries of the plaintiff to ascertain from him whether he held a landlord's lien on said grain for the rent of said land, but that the plaintiff failed and refused to give them any information as to his rights in said grain or as to the amount of rent due from his said tenant, and evaded their questions, and that by reason thereof the plaintiff waived his lien upon the grain in controversy as to the portion purchased by the defendants, and was estopped by his own conduct from asserting his claim against the defendants for any portion of the grain purchased by them, and that to permit the plaintiff to recover against the defendants, would be a fraud upon their rights. The plaintiff by replication denied that he had refused to give the defendants the information asked for and averred that he gave them all the lawful information required of him. At the close of all the evidence the court instructed the jury to find the issues for the plaintiff, which was accordingly done.

It appears from the uncontroverted evidence that on or about September 2, 1907, Hill delivered to the defendants at their elevator at Fisher, Illinois, about 708 bushels of oats which had been raised by Hill on the farm of Chapin, and that the market value of the same at the time and place was 41 cents per bushel, and upon such price the verdict returned was based. Hill defaulted in the payment of the rent reserved, whereupon Chapin levied a distress warrant upon the corn and broom-corn found upon the premises, from the sale of which he realized all of the rent due except the sum

of $458.27. The leading facts involved being practically uncontroverted, the only questions presented for determination are whether the plea of estoppel by words and conduct was established by the evidence, and whether the measure of damages was the price at which the defendant purchased the oats from Hill or that adopted by the trial court in its instruction. To sustain the first proposition, the defendants offered in evidence the following letters:  .

"FISHER, ILLINOIS, Aug. 8, 1907.
*"Mr. E. B. Chapin, Champaign, Ill.*

Please state clearly your position in relation to the rent on your farm south of here now operated by Mr. W. E. Hill.

You are no doubt well aware of the fact that grain-dealers are liable to landlords for cash rent under certain conditions, and we are always desirous, therefore, of a perfect understanding in such matters.

We have absolutely no reason to doubt that your tenant will comply with every term of your contract with him, but we think that a business-like understanding in matters of this kind productive of harmonious relations between landlord, tenant and dealer.

MILES & RICKETTS."

"CHAMPAIGN, ILL., Aug. 12, 1907.
*"Miles & Ricketts, Fisher, Ill.*

Replying to your favor of 8th inst. will say in regard to the rent on the farm operated by Mr. W. E. Hill, that I waive none of my rights.     E. B. CHAPIN."

"FISHER, ILLINOIS, Aug. 14, 1907.
*"Mr. E. B. Chapin, Champaign, Ill.*

Your favor of the 12th inst., at hand and contents very carefully noted, and in reply beg to state, we would like very much to know on what terms you have your farm rented to Mr. Hill, if for cash we would like to know for how much and when payments are due. We ask this as we have advanced considerable money to Mr. Hill, and we very much desire to protect you as well as ourselves. We are very glad to accommodate Mr. Hill, as long as we have any assurance of his ability to deliver enough of his own grain to meet

all obligations. On account of the law holding us responsible for landlord's rent we would thank you very much if you can see fit to co-operate with us in this matter and furnish us with the desired information. MILES & RICKETTS."

"CHAMPAIGN, ILL., Aug. 16, 1907.
"*Miles & Ricketts, Fisher, Ill.*

Replying to your esteemed favor 14th inst., will say that I have nothing whatever to do with Mr. Hill's individual financial affairs. I know nothing about his claims to credit, either favorably or unfavorably. My only relations with him are those of landlord to tenant. His rent is payable in December. Until it is fully paid I release nothing, but I stand on all my rights as landlord. E. B. CHAPIN."

"FISHER, ILLINOIS, Aug. 19, 1907.
"*Mr. E. B. Chapin, Champaign, Ill.*

Your favor of the 16th at hand, and contents very carefully noted, and in reply beg to state, you are failing to look at our correspondence in the right light; ·we do not desire to know of you anything about Mr. Hill's financial affairs, what we want to know is this how much rent does Mr. Hill owe you and when is it due. A man of your ability had ought to be able to see, even if he can't, that it is quite impossible for us to protect him, when he will not give us the information to protect him on. Owing to the stand you have taken in this matter of refusing to furnish us with desired information, we in the future will be compelled to refuse to buy the grain from your. farm, inasmuch as you see fit to place all the liability on the grain man and will not give him your assistance. While we are only too glad to accept the responsibility the law places on us under ordinary circumstances, we cannot take the chances in cases like this, where the landlord will not co-operate with us for his own good. We do not know whether Mr. Hill paid you part rent in advance, or whether he pays cash rent or grain rent, or when either is due nor how much. How can we protect either you or ourselves?

MILES & RICKETTS."

"CHAMPAIGN, ILL., Oct. 16, 1907.
*"Miles & Ricketts, Fisher, Ill.*

I am informed that W. H. Hill, or his employes, has delivered to you 800 bushels of oats from my farm. Kindly take notice that, as I have previously informed you, I do not release my landlord's lien on these oats or any other products of my farm, and I hold you responsible for the oats and for any other of the products delivered to you.          E. B. CHAPIN."

The court properly sustained an objection to said letters on the ground that the same were immaterial and did not tend to prove any issue in the case. Before the doctrine of estoppel can be applied as between individuals, it is essential that the party against whom the doctrine is invoked shall by words or conduct wilfully cause another to believe that a certain state of facts exists, and thereby induce him to act thereon so as to change his previous condition by doing something detrimental to his interests. Holcomb v. Boynton, 151 Ill. 294. The statements contained in the letters of the plaintiff quoted are substantially to the effect that he stood by and waived none of his rights as landlord. He was not bound to disclose the status of his rent account with Hill, and we are unable to see how his failure to do so could have misled the defendants to their disadvantage. On the contrary the effect of the same would be to advise an ordinarily prudent person that one purchasing the crops in question would do so at his peril.

No defense having been established by the defendants, the action of the court in directing a verdict for the plaintiff was proper. We are of opinion, however, that the court erred in instructing the jury that the measure of damages in the event of a recovery by the plaintiff was the fair market price of the oats at the time the same were delivered by Hill to the defendants. A landlord merely by virtue of his lien on the crops of his tenant, without the levy of a distress warrant, has no right to take possession of such crops, either before or after the rent is due. His remedy for

fraudulent acts tending to impair the security given by his lien, is an action on the case. His lien vests him with no right in the property itself, and will not enable him to maintain replevin, trover or trespass prior to the levy of his distress warrant. Finney v. Harding, 136 Ill. 573. Hill, the tenant, had a right at any time prior to the levy of a distress warrant, to sell the crops in question, at any price he saw fit, provided he acted in so doing without fraud and in good faith. There is nothing to show actual fraud in the present case, or a lack of good faith, in so far as the price at which the oats were bought and sold is concerned. The extent of recovery should therefore be limited to the amount actually paid by the defendant to Hill for the oats. It follows that the refusal of the court to permit the defendants to show the price they paid Hill for the oats was error.

It was not error to refuse to permit the defendants to show upon cross-examination of the plaintiff what profit he realized upon such of the other crops as were purchased by him at public sale under the distress proceedings. The sale was judicial and open to all, and what the plaintiff realized, if anything, by subsequent sale of the crops purchased by him, was no concern of the defendants.

The judgment of the Circuit Court will be reversed and the cause remanded.

*Reversed and remanded.*